## EVANS v. INDEPENDENT NAT. LIFE INS. CO., Inc. *
### No. 14478.

Court of Appeal of Louisiana. Orleans.

May 22, 1933.

Normann & McMahon and Harold M. Rouchell, all of New Orleans, for appellant.

Charles J. Mundy, of New Orleans, for appellee.

HIGGINS, Judge.

Plaintiff, as beneficiary, sought to recover the face value of a life insurance policy issued by the defendant which is engaged in business as an industrial life insurance company. The defendant pleaded that as plaintiff was related to the deceased as a cousin he was without an insurable interest since the plaintiff took out the policy of insurance, named himself as beneficiary, and paid all premiums.

There was judgment in favor of plaintiff as prayed for and defendant appealed.

Plaintiff filed a motion in this court to dismiss the appeal which was originally sustained (Evans v. First Nat. Life Ins. Co., 141 So. 101), but on rehearing was denied (142 So. 356).

In considering the merits of the case we held that the relation of cousin per se did not give the plaintiff an insurable interest in the life of deceased and remanded the case for the purpose of taking evidence on the issue of whether or not the plaintiff had caused the policy to be issued and paid the premiums thereon. 143 So. 724.

The second trial on the merits also resulted in a judgment in favor of the plaintiff and defendant again appealed.

Plaintiff testified that the insured, Gus Simpson, applied for the policy of insurance, named him as beneficiary, and paid all the premiums as they fell due. He stated that the deceased worked for him and, on several occasions, when the collector called for the premiums the insured was out and that he paid them but was subsequently reimbursed by the insured. On cross-examination he was confronted with a letter which he had a white woman write for him to the secretary

of state, complaining of the company's refusal to pay the proceeds of the policy to him. He admitted that he gave the lady the information to put in the letter and that she had read it back to him after it was completed and found no fault with it. The relevant part of the letter reads as follows: "A representative of this company came to me and I insured this man (my cousin) and myself and have been paying promptly. I had no intention of buying insurance had I not been persuaded by their agent."

The woman who wrote the letter was also placed on the stand and she testified that the information contained in it was secured from the plaintiff and that she slowly and carefully read the letter to him before she delivered it to him for the purpose of mailing it to the secretary of state.

The only objection to the letter made by either of these witnesses related to the presence of the words "and I" in the first sentence. They state that it appeared to them that the original words at that place had been erased and these two words inserted. On cross-examination, however, they were unable to say what words had been erased and would not say positively that the words "and I" were not in the letter at the time it was written.

The defendant placed on the stand a handwriting expert who testified that the two words were written by the same party who wrote the balance of the letter. He was shown a sample of the lady's writing, which was written in the courtroom, and testified that both documents were written by the same party.

Mr. John H. Dew, one of the officers of the company, testified in both the original and subsequent trials on the merits that the letter was sent to him by the secretary of state and that no changes had been made in it. He further testified that before receiving the letter plaintiff had called upon him and admitted that he had taken out the policy on the life of his cousin and named himself as beneficiary and paid the premiums as they became due.

We are convinced that the words "and I" were originally in the letter and that it is in the same condition as at the time it was written. The continuity of thought and the words used clearly indicate this fact.

█ █ The letter was voluntarily written at an unsuspicious time and, therefore, is entitled to great weight. 28 R. C. L. page 641, verbo "witnesses," § 225; Evans v. Independent National Life Insurance Co. (La. App.) 143 So. 724; Galt et ux. v. Travelers' Ins. Co. (La. App.) 141 So. 105; Zuviceh v. Schnyder, 18 La. App. 121, 137 So. 379; Sharp v. Hall, 86 Ala. 110, 5 So. 497, 11 Am. St. Rep. 28; Florida Central, etc., R. Co. v. Mooney, 45 Fla. 286, 33 So. 1010, 110 Am. St. Rep. 73;

People v. Hayes, 140 N. Y. 484, 35 N. E. 951, 23 L. R. A. 830, 37 Am. St. Rep. 572; Aldridge v. Ætna Life Ins. Co., 204 N. Y. 83, 97 N. E. 399, 38 L. R. A. (N. S.) 343; Skillman v. Leverich et al., 11 La. 517; vide, also, Bair v. Abrams, 12 La. Ann. 754; Donnell v. Parrott and wife, 12 La. Ann. 690; 1 R. C. L. verbo "Admissions and Declarations," § 42; 28 R. C. L., verbo "Witnesses," § 219; 2 Jones Commentaries on Evidence (2d Ed.) 1647 and 1648. We find that plaintiff caused the policy to be issued upon the life of the deceased, named himself as beneficiary, and paid the premiums thereon. Under the law when a policy of life insurance is taken out by a third person, who is not related to the insured within the degree of consanguinity as to create an insurable interest per se, and he has himself named as beneficiary and paid the premiums, the policy is void as being against public policy, the beneficiary not having an insurable interest in the life of the insured. Robinson v. Washington Fidelity National Life Insurance Co., 16 La. App. 280, 134 So. 115; Cooley's Briefs on Insurance (2d Ed.) volume 1, page 330; Vance on Insurance (2d Ed.) pp. 154, 155; 14 R. C. L. 905, verbo "Insurance," § 84; Rombach v. Piedmont & Arlington Life Insurance Co., 35 La. Ann. 233, 48 Am. Rep. 239; Williams v. People's Life & Accident Ins. Co., 224 Mo. App. 1229, 35 S.W.(2d) 922; Home Life Insurance Co. of New York v. Masterson, 180 Ark. 170, 21 S.W.(2d) 414; Finn v. Metropolitan Life Ins. Co. (Tex. Civ. App.) 16 S.W. (2d) 922.

█ The liability of the insurance company, under such circumstances, is merely to return the amount of the premiums paid. Robinson v. Washington Fidelity National Life Insurance Company, 16 La. App. 280, 134 So. 115.

However, the above authorities should not be confused with those involving cases where the beneficiary had a financial interest in the life of the deceased, i. e., being dependent or having loaned the deceased money, nor with cases where the insured makes application for the policy, names some third person as beneficiary, and pays the premium. New York Life Ins. Co. v. Murtagh, 137 La. 760, 69 So. 165; Stuart v. Sutcliffe, 46 La. Ann. 240, 14 So. 912; Succession of Hearing, 26 La. Ann. 326; Dolan v. Metropolitan Life Insurance Company, 11 La. App. 276, 123 So. 379.

█ Plaintiff finally contends that the defendant is estopped from pleading as defense want of insurable interest in the plaintiff because there must have been some kind of application, either by the insured or the beneficiary, before the policy was issued, and as the defendant would have possession of the document, defendant should have produced the application as it was the best evidence as to who applied for the insurance, and that de-

fendant failed to make such an offer. The evidence does not establish whether or not there was an application made for the issuance of the policy. The plaintiff made no effort to call for the production of such a document either by simple request or through a subpoena duces tecum. The record shows that there was no application annexed to or made a part of the policy and, under the provisions of Act No. 227 of 1916, such an alleged application would have been inadmissible as evidence to support the defense of the insurance company. Coleman Williams v. Unity Industrial Life Ins. Co., 14 La. App. 680, 130 So. 561. However, the act of 1916 does not restrict the plaintiff as a claimant in this respect.

Since the plaintiff failed to prove that there was an application and did not take any action to have it produced, if it was in existence, in order that it could be tendered in evidence, we feel that the plea of estoppel is without merit.

For the reasons assigned the judgment appealed from is annulled, avoided, and reversed and it is now ordered that there be judgment in favor of the defendant dismissing plaintiff's suit at his cost.

Reversed.