HARDY, Justice.
Plaintiff instituted this suit as beneficiary under a policy of life insurance issued by the defendant company on the life of Bernard Balthazar, Sr., to recover the face amount of the policy in the sum of $1,000 together with penalties, interest and attorney’s fees. After trial there was judgment in favor of plaintiff in the sum of $875 with legal interest from judicial demand until paid. From this judgment defendant has appealed. Plaintiff has answered the appeal, praying an increase in the principal sum to the amount of $1,000 reiterating the demand for 12% penalty, attorney’s fees, and seeking a 20% penalty for the prosecution of a frivolous appeal.
Decedent, Balthazar, made and signed an application for a policy of insurance on date of March 24, 1952, which application was accepted and the policy issued by defendant company on April 7, 1^52. The insured died July 14, 1952. In the application for insurance decedent named plaintiff, Thomas Nora, Jr., as beneficiary, setting forth his relationship as being that of cousin.
Defendant resists plaintiff’s demands on the grounds that the insured was guilty of false and fraudulent representations in the application and that the beneficiary named was without any insurable interest.
*488 The false statements of which defendant complains are predicated upon the representation in the insured’s application that he had not consulted a doctor nor had any medical treatment nor examination within a period of five years prior to the date of application, and that he had misrepresented his age. Careful examination of the record has served to convince us that defendant has completely failed to establish this defense. From the evidence it is conceivable that a conclusion could be reached to the effect that the insured was in poor health at the time of making the application, but it is not shown that he was aware of this fact nor is it established, in even the slightest degree, that he was suffering from any disease, malady or infirmity at the time. The only evidence directly bearing upon this point consists of a partial extract from a record of the Shreveport Charity Hospital where the insured was examined on or about May 9, 1952, and was found to be suffering from heart disease. The certificate of death introduced in evidence showed that insured died as the result of a coronary occlusion. Even without any controverting evidence this meager showing would be insufficient to avoid liability on the policy upon the grounds set forth. However, there was ample testimony by witnesses on behalf of plaintiff which conclusively establishes the fact that the insured was not known to have been suffering from any disease or physical infirmity.
It does appear from the record that the age of the applicant for insurance, which was fixed at 36 years in the application, was in error, although again the testimony on this point is lacking in any certainty. The death certificate gives the decedent’s age as 38 years. But it is not established in any degree that this comparatively slight error in age was sufficient to prejudice the defendant in the issuance of the insurance.
The only serious question which appears to be involved in this case concerns the contention that this plaintiff was without any insurable interest. In this connection the circumstances surrounding the making of the application for insurance are somewhat pertinent.
On the date of the making of the application, that is, March 24, 1952, Balthazar and an agent of defendant, one E. B. Joseph, were in a saloon owned and operated by plaintiff. It appears that Joseph was complaining of the fact that he was not doing much business in the way of writing insurance, whereupon Balthazar volunteered an offer to take out a policy if Nora would pay the premium, asserting that he would “will’ the policy to Nora. The offer, which may perhaps have been initiated in jest, was taken up and acted upon by all parties; the application was filled out, signed by Balthazar, certified by Joseph and the initial premium paid by plaintiff, Nora. Nora continued to pay the premiums on the policy until the death of Balthazar, which occurred something less than four months later.
Examination of the authorities convinces us that the defense of lack of insurable interest is unsound for it appears that the use of this phrase is interpreted as having application only in those instances where the insurance is procured by a party who is designated as beneficiary, without the application or the knowledge and consent of the insured.
We find the general rule to have been definitely stated in Dolan v. Metropolitan Life Ins. Co., 11 La.App. 276, 123 So. 379, 382, in which case the court declared:
“There is nothing in the law of (or) public policy which would prevent an insured from taking out a life insurance policy and designating a stranger as the beneficiary, and, upon his inability to pay the premiums, permitting the beneficiary to pay them.”
It is true that this pronouncement has been the subject of some variation as to application, dependent, however, upon the facts involved. For example, in New York Life Ins. Co. v. Murtagh, 137 La. 760, 69 So. 165, the court concluded that the defense of lack of insurable interest was *489 without merit in view of the fact that the decedent had insured his own life and paid the premiums. The case of Washington v. Victory Industrial Life Ins. Company of Louisiana, La.App., 146 So. 766, sustained the defense because the plaintiff had procured the policy, named herself as beneficiary and paid the premiums thereon, and this conclusion was justified by failure of plaintiff to establish the contention that these acts had been performed with the consent, aid and assistance of the insured. Careful reading of the case of Evans v. Independent Nat. Life Ins. Co., Inc., La.App., 148 So. 264, 265, convinces us that the pronouncement of the court does not justify the great reliance which is placed in this holding by learned counsel for defendant, for the facts in that case were that the plaintiff beneficiary had “caused the policy to be issued upon the life of the deceased, named himself as beneficiary, and paid the premiums thereon.”
In the instant case there is no showing of any fraud, conspiracy, nor any act in contravention of public policy nor of good morals on the part of this plaintiff. It is obvious under the facts that the insured at any time was at liberty to make a change of beneficiary without notice to plaintiff.
With reference to the amount of the judgment, we are at a loss to understand the reasons which impelled the district judge to render judgment for an amount less than the face value of the policy. It is implied that this' diminution was effected upon the basis of the difference in cost of insurance as between the incorrect age recited in the application and the applicant’s real age. On this point we observe that there is some question in our minds as to whether the true age of the decedent has been in fact conclusively established by any competent evidence in the record. In any event we find nothing which would fix a basis for a change in the amount of insurance purchasable for the premiums paid as between the age limits of 36 and 38. We are therefore forced to the conclusion that plaintiff is entitled to recovery of the full face value of the policy.
As to the claims for penalty, attorney’s fees and an additional penalty for' frivolous appeal, we have no hesitancy in rejecting these claims as being thoroughly untenable. The effort involved in the formulation of the foregoing opinion, and the difficulty encountered in reaching what we believe to be the correct conclusion, is in itself evidence of the serious merits of the defense.
For the reasons assigned the judgment from which appealed is amended by increasing the amount thereof from the principal sum of $875 to $1,000, and, as amended, is affirmed at appellant’s cost